MARY LEAPHART AND POLLY LEAPHART *vs.* MARTIN T. LEAP-HART AND OTHERS.

Where, in a civil action, it is material to prove that A. and B., who are strangers to the record, were husband and wife at a certain time, B., the wife, is a competent witness to prove that fact.

It is not a valid objection to a commission to examine witnesses resident in a foreign country that, on its being produced in Court to be opened, the post mark is that of a foreign office.

Where it is referred to the Commissioner to ascertain and report upon the facts with instruction to make a full report of the testimony—the parties to be at liberty to take out commissions to examine witnesses—he, the Commissioner, may, at the reference, permit the commissions to be opened and read.

It is not admissible to impeach the character of a person who has not been examined as a witness in the cause, merely because he made an affidavit, which was read at a previous stage of the proceeding, and had been active in procuring evidence for the opposite side.

An appellate Court will not order an issue to try a question of fact which the Court below has decided, except in a case of great doubt.

BEFORE JOHNSON, CH., AT LEXINGTON, JUNE, 1867.

The points made by the appeal in this case will be understood from the Circuit decree and grounds of appeal. The Circuit decree is as follows:

JOHNSON, Ch.　On the ——— day of ——— , 185 , George Leaphart died intestate, leaving, as his heirs at law, his children, Martin T. Leaphart, George Jefferson Leaphart, Simon A. Leaphart, and Sarah Leaphart, who has since intermarried with James E. Drafts, and leaving a considerable personal estate and a large real estate, lying in Richland and Lexington Districts; and soon afterwards John Fox took out letters of administration upon his estate. In 1853, after the death of George Leaphart, but before his estate was settled, his son, Simon A. Leaphart, died intestate, leaving, as is contended by the complainants, them as his heirs at law, and, as is contended by the defendants, his said brothers and sister, and leaving a small personal estate which he had had in possession, and his undivided portion in his said fathers' estate; and, soon after his father's death, his brother, Martin T. Leaphart, administered upon his estate. And in April, 1855, the bill in this case was filed against Martin T. Leaphart, for an account; but before he answered the bill he died intestate, leaving a considerable estate to be divided between George J. Leaphart and Sarah Drafts, or between them and the complainant, Polly; and Levi Gunter, soon after his death, took out letters of administration upon his estate; and a bill of revivor was filed for the purpose of bringing him before the Court. It has heretofore been established in this Court that Simon A. Leaphart, on the 1st day of December, 1852, married the complainant, Mary; and that, on the 1st day of April, 1839, she was married to Robert Ferguson, who, in the latter part of 1841, separated from her and went off, and has not yet returned. The question in the case is: Was the marriage between her and Simon A. Leaphart valid? . If so, the complainants, as his widow and child, are entitled to his estate, and his child to a distributive share in the estate of Martin T. Leaphart; and if not, they are entitled to no portion of either.

The evidence of Cornelius Clark established the fact that Robert Ferguson was living in Alabama as late as 1853 or 1854.

In reply to this evidence, the complainants introduced a large amount of testimony, establishing the fact that Robert Ferguson, prior to 1836, had married a woman by the name of Vere Miller, in or near the city of Glasgow, Scotland; and that, in 1836, he left her and two small children, and came to Pennsylvania, and stayed there a short time, and then came to Columbia, South Carolina. The testimony also establishes the fact that his first wife is still living, in Canada West, as the wife of John Balfour. It was, how-

ever, insisted, on the trial, that a large portion of the testimony re-
ported by the Commissioner should be ruled out by the Court:
First, On the ground that two commissions which had been returned
bore foreign post marks, and that there was no proof that they were
authentic. And, secondly, That they were opened by the Commis-
sioner without the consent of the parties, and not in open Court,
upon motion, as is required by the twenty-first rule of Court.

The evidence was taken by the Commissioner under an order
granted by Chancellor Johnston, 28th June, 1858: "That it be
referred to the Commissioner to ascertain and report whether any
legal impediment existed to the validity of the marriage of the
plaintiff, Mary Leaphart, and the said Simon A. Leaphart, the in-
testate, at the time the said marriage was solemnized; and that he
do make a full report of the testimony; and that the parties be at
liberty to take out commissions to examine witnesses out of the
State, aged and infirm," &c.

I regard the first objection as entirely without foundation, and I
think the order of the Court made it necessary for the Commissioner
to open the commissions, in order that he might report the evidence
to the Court; and I think the Commissioner acted in strict con-
formity to the practice of the Court. Vere Balfour was examined
by commission, and her testimony was objected to by the defend-
ants. I think it was competent; but were I to exclude it, and the
testimony of all the witnesses who were examined by commission, I
would hold that the former marriage of Robert Ferguson was
established, and that his marriage with the complainant, Mary, was
void.

It is the opinion of the Court that the marriage between the
complainant, Mary Leaphart and Simon A. Leaphart, was valid,
and that she and her daughter are his heirs at law.

John Fox, in his answer, sets up the fact that he has fully ad-
ministered the estate of his intestate, and that he paid over to
Martin T. Leaphart, as the administrator of S. A. Leaphart, his
interest in the personal estate of his brother.

It appeared, from the pleadings, that Mary Leaphart was either
administratrix *de bonis non* or *pendente lite* of her late husband.

It is ordered and decreed, that a writ of partition do issue to
divide the real estate of George Leaphart and Martin T. Leaphart
amongst the parties entitled to the same.

It is also ordered and decreed, that it be referred to the Commis-
sioner to audit the accounts of Levi Gunter, the administrator of

Leaphart *vs.* Leaphart.

Martin T. Leaphart, and that Mary Leaphart do account before him for any portion of her late husband's estate which may have come into her hands.

It is also ordered and decreed, that it be referred to the Commissioner to ascertain and report whether John Fox has closed up the personal estate of his intestate or not.

And it is also ordered and decreed, that the parties may take further orders at the foot of this decree.

The defendants appealed, and now moved this Court to reverse the decree, upon the grounds:

First. Because two commissions bearing foreign post marks, one purporting to have been executed in Scotland, and the other in Canada, were irregular, and not legally executed and authenticated; and His Honor erred in admitting in evidence the depositions of the witnesses examined under them, respectively.

Second. Because His Honor erred in sustaining the action of the Commissioner, in publishing the several commissions offered on reference. And it is respectfully submitted that such publication not being made in open Court, and without the consent of the defendants, was in violation of the twenty-first rule of Court; and, further, that all testimony taken after the publication of these commissions was irregular, and should not have been admitted.

Third. Because the depositions of Vere Balfour; the alleged wife of Robert Ferguson, were incompetent, and His Honor erred in permitting them to be read as evidence.

Fourth. Because the declarations of Robert Ferguson, Thomas Miller, Mary Miller, and Vere Miller, the supposed wife of Robert Ferguson, were incompetent, and His Honor erred in admitting them in evidence.

Fifth. Because there was no proof of a valid marriage between Robert Ferguson and Vere Miller.

Sixth. Because the testimony was insufficient to establish the alleged marriage of Robert Ferguson and Vere Miller.

Seventh. Because the marriage of Robert Ferguson and the complainant, Mary Leaphart, was contracted in good faith, and was duly solemnized, was established by incontestable and indubitable evidence, and there was no legal impediment to its validity.

Eighth. Because there was no sufficient evidence of the identity

of *the* Robert Ferguson, who, it is alleged, intermarried with Vere Miller, in Scotland, and Robert Ferguson, the husband of the complainant, Mary Kelly.

Ninth. Because the testimony, in all the material points in the case, and especially as to the alleged marriage of Robert Ferguson and Vere Miller, of his identity with the man of the same name who intermarried with Mary Kelly, and the credibility of the witnesses on the part of the complainants, was so conflicting, uncertain and unsatisfactory as to require an issue to be tried by a jury, to pass upon these questions; and it is respectfully submitted that His Honor should have so ruled.

Tenth. Because His Honor erred in deciding that the complainant, Mary Leaphart, was administratrix *de bonis non* of Simon A. Leaphart, in requiring her to account as such, whereas the testimony was abundant and uncontradicted that she was only administratrix *pendente lite.*

Eleventh. Because His Honor erred in sustaining the Commissioner in excluding the evidence offered by the defendants, as to the character and credibility of Job Russell, who had made an affidavit, and was sworn as a witness in the cause. And the defendants crave that the Court of Appeals will have inspection of the original affidavits of the said Job Russell and Vere Balfour, upon which His Honor Chancellor Johnson, at June Term, 1858, granted the order from which His Honor quotes in his decree.

Twelfth. Because His Honor erred in stating in the decree that Martin T. Leaphart had not answered the bill in his lifetime, whereas the fact is that he had answered, and the cause had been partially heard, and orders passed, before his death.

Thirteenth. Because His Honor erred in requiring the defendant, John Fox, administrator of George Leaphart, to account for his administration, notwithstanding the said John Fox has stated in his answer that he had settled up the estate of the said George Leaphart in full before the filing of the bill, and there is no evidence contradicting his answer.

Fourteenth. Because His Honor erred in ordering and decreeing that it be referred to the Commissioner to audit the accounts of Levi Gunter, administrator of Martin T. Leaphart, notwithstanding he had stated in his answer the character of the assets and investment, and there is no evidence controverting or contradicting his answer.

Fifteenth. Because the decree is contrary to law and equity, and is not sustained by the evidence.

*Boozer, Fair, Fort,* for appellants.

*Bauskett, Caughman,* contra.

Oct. 9, 1869. The opinion of the Court was delivered by

Moses, C. J.　Objection is made by the grounds of appeal to the competency of the witness, Vere Balfour, the alleged wife of Robert Ferguson.

It proceeds from an erroneous application of the well recognized common law principle, that husband and wife are not admissible as witnesses, in cases in which the other is a party. The exclusion is founded not only on the relation in which they stand to each other, but upon reasons founded on considerations of public policy.

Though they are not allowed to testify, where the interest of either is directly involved in the result, " yet, in collateral matters, not immediately affecting their mutual interests, their evidence is receivable, notwithstanding it may tend to criminate, or may contradict the other, or may subject the other to a legal demand."— 1 Green. Ev., 141.

The decision in the case of the *King* vs. *Cliviger,* (2 T. R., 263,) which held that a wife shall not be called in any case to give evidence, even tending to criminate her husband, was considered and overruled by the case of the *King* vs. *Bathwich,* 2 Barn. and Ad., 639, in which Lord Tenterden, C. J., drew the distinction between the application of the rule, where the proceeding made a direct charge against the husband for any offence, or its immediate result was to affect his interest, and where it was only collateral, and did not, of itself, act on his interest.

On a prosecution for bigamy, or in an action for criminal conversation, proof of actual marriage is required. In all other cases, marriage may be presumed from cohabitation, reputation, acknowledgment of the parties, and other circumstances from which it may be inferred.—*Fenton* vs. *Reed,* 4 John., 54.

In *Allen* vs. *Hall,* 2 N. and McC., 114, the principles above announced were carried to the extent of holding that the declarations of the husband or wife, as to the marriage, were admissible.

The ground of appeal which charges a want of compliance, in the execution of the commissions, with the requisitions of the rules of Court, and the prevailing practice, is not well taken. Where the return itself shows that the commission has been executed according to the provisions of the law, he who avers against it must make good the objection, by affidavit, or in some other competent form. The allegation of want of proof that the Commissioners took the prescribed oath is founded in mistake. The certificate annexed to each commission, with a strictness not generally observed, states, distinctly, that the Commissioners were sworn before they proceeded to take the testimony. The envelopes bore on their face the foreign post mark, were received by the officer to whom they were addressed, in the regular course of mail, and we are not to presume fraud or wrong, in reference to any of the parties who had to deal with them.

It is complained that the Commissioner published the commissions offered on reference, when it should only have been done in open Court.

The order of Chancellor Johnson, at June Term, 1858, directed the Commissioner to make a full report of the testimony, with liberty to the parties to take out commissions to examine witnesses out of the State, &c. How could he report the testimony in full, without hearing that of all the witnesses offered; and if the commissions rightfully issued—which is admitted—the parties were as much entitled to the evidence thus obtained as if the persons who gave it were present to be placed upon the stand?

How can it be said that the commissions were not published in open Court?

The Commissioner was then holding the reference in obedience to the order of the Chancellor. Acting within the limits of his jurisdiction, he was presiding in his Court, with the same right as the Chancellor possessed, to decide on all questions touching the competency of testimony, and on all points incidentally arising before him. It would be a most singular conclusion, to hold that he had not authority to order the publication of a commission which contained testimony to be heard and reported by him.

The right was claimed by the defendants, on the reference, to attack the character of one Job Russell, who had made some affidavit, which, with others, was before Chancellor Johnson when he made the order of June, 1858, already referred to. The Circuit Court sustained the course of the Commissioner in refusing to allow

such testimony, and error in this particular is submitted by one of the grounds of the appeal.

If a party was permitted to attack the character of an individual who had not been a witness in the cause, it is difficult to perceive where litigation, in such case, would terminate. The character of a witness is liable to attack, on the presumption that, in the course of the proceeding, he has sworn something of prejudice to the side which, therefore, thinks it necessary to weaken its force by assailing his reputation. If the defendants could attack the character of Russell, who was not a witness, because he may have had an active agency in collecting proofs for the plaintiffs, as well might the same course be permitted as against any one who had manifested an interest in the success of the cause, the one way or the other?

On the hearing, however, before the Chancellor, Russell was examined as a witness. The defendants then had full opportunity to impugn his testimony. When the opportunity was offered, they refrained from availing themselves of it, and then complain they were prevented from doing it, when, by the rules of evidence, it was not competent for them to do so.

We are now brought to the consideration of the only material point upon which the pleadings raise an issue.

That Mary, the plaintiff, was married to Robert Ferguson on the 1st day of April, 1839, and that, living the said Robert, she then married the said Simon A. Leaphart, on the 1st of December, 1852, are facts established by the testimony. Simon A. died in 1853, and the said Mary was his widow, unless the marriage was invalid by reason of some legal impediment. If her marriage with Ferguson was binding, because lawful, then the union with Leaphart was null, and neither heirship or any legal consequence could follow.

It became important, therefore, to the plaintiffs, to show that the first marriage of the said Mary was void, by satisfying the Court that, at the time of the supposed alliance with Ferguson, he had a wife living. It was incumbent on the plaintiffs to sustain the affirmative; the burden of proof was on them.

Marriage is a question of fact. Here it was to be solved by the Chancellor; and after a full hearing and consideration of the testimony he has decided that the marriage of the plaintiff Mary to Ferguson was unlawful, because, at the time, he had a wife alive.

The principal argument that has been made in this Court against

the proof tending to sustain the conclusion of the Chancellor, is founded on the discrepancy and confusion exhibited in the testimony of the witnesses who were examined on the part of the plaintiffs.

It was suggested, with much zeal, that the testimony to identify the said Ferguson with the person who married Vere Miller should be entirely disregarded, by reason of the uncertainty created by the dates to which they refer, as fixing the periods when they trace him from Scotland to this country, and through several States of the Union.

There is, probably, nothing in which the memory is so much at fault as the matter of dates. Events which transpire before the eyes, and thus become impressed upon the mind, are borne in recollection by the incidents with which they are connected. They take position in the memory, and can almost be pictured on paper with the pencil. We know that they occurred, and the place of their occurrence is fixed with them. We can remember them with a singular vividness, can refer to the spot at which they transpired, but cannot fix the precise day on which they were witnessed. It is enough that the witnesses trace the said Ferguson, from time to time. True, it would be an important breach in the chain of testimony, if it established the fact that he was in the United States about the period it is affirmed he married in Glasgow.

The presumption so assiduously urged by the counsel, that the Vere Balfour, who has testified as being the woman the said Ferguson married, is not the same person whose maiden name was Vere Miller, is not founded on a particle of evidence in the mass which has been offered. Not a word of the testimony even intimates a circumstance to justify such an inference. The effort would have been more plausible to show that there were two Robert Fergusons, than that the Vere Miller has been personated by some woman, to play her part, as a witness, on behalf of these plaintiffs.

The Chancellor, after full consideration of the proof, held that the marriage between the plaintiff, Mary, and Simon A. Leaphart was valid, and that she and his daughter (the co-plaintiff) were his heirs at law and distributees.

We are asked to reverse his conclusions on the facts, or to order an issue under which they may be passed upon by a jury.

This renders it proper that we should advert to the course and practice of the Court in like matters.

Leaphart *vs.* Leaphart.

In the *City Council of Charleston* ads. *Hagemeyer et al.*, Riley's Eq., 120, the Court say: "The object of an issue at law is to satisfy the conscience of the Chancellor, and motions for them are necessarily addressed to his discretion. This is a matter in which the Court rarely interferes, and never, except in cases of great doubt."

In *Pasley* vs. *Martin*, 5 Rich. Eq., 354, Chancellor Johnston, in his Circuit decree, remarks: "Issues are ordered on matters of fact, at the discretion of the Chancellor, to relieve his mind. In this case, I have no doubt which would induce me to refer the facts to a jury."

Chancellor Dunkin, delivering the opinion of the Appeal Court, says: "That the judgment (of the Chancellor) is well sustained by the reasons which he has presented."

In *Kilpatrick* vs. *Atkinson*, 41 Rich. Eq., 30, the same Chancellor, expressing the views of the same Court, says: "This is an appellate tribunal, and it is incumbent on the party asking for a revision of the Chancellor's judgment to satisfy this Court that he has miscarried."

We are aware that this Court has the power to order an issue at law, even when no application has been made for it on Circuit; (*Sinclair* vs. *Riddle*, 1 Hill Ch., 440;) but, in exercising it, we must have regard to the considerations which should prompt its action. Do our consciences require relief from any doubts which the verdict of a jury can administer? Do we regard the evidence so conflicting, or its weight so uncertain, that our judgment on the facts cannot readily incline in the one direction or the other?

We have not been reduced by our examination of the testimony to this condition of doubt, and, therefore, affirm the judgment of the Chancellor, establishing as valid the marriage of the said Mary Leaphart with the said Simon A. Leaphart.

We do not perceive any material error in so much of the decree as refers the accounts of the several personal representatives to the Commissioner. If there is no liability, by reason of assets received, they cannot be prejudiced by the order.

The motion is dismissed.

*Willard*, A. J., concurred.